UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LINDA KAY RHODUS

VERSUS

NANCY A. BERRYHILL
ACTING COMMISSIONER
OF SOCIAL SECURITY

CIVIL ACTION

NO. 17-545-EWD

(CONSENT)

**RULING**

Plaintiff, Linda Kay Rhodus ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] Plaintiff has filed Memorandum in Support of her appeal,[2] the Commissioner has filed an Opposition Brief,[3] and Plaintiff has filed a Reply.[4]

Based on the applicable standard of review under § 405(g) and the analysis which follows, the court **VACATES**[5] the Commissioner's decision and **REMANDS** Plaintiff's case for further administrative proceedings consistent with this opinion.

---

[1] AR pp. 263-269 (application for DIB), AR pp. 270-278 (application for SSI), AR pp. 1-6 (Notice of Appeals Council Action). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."

[2] R. Doc. 15.

[3] R. Doc. 19.

[4] R. Doc. 22.

[5] The parties consented to proceed before the undersigned United States Magistrate Judge, R. Doc. 8, and on October 27, 2017, an Order of Reference was entered by the District Judge referring this matter to conduct "all further proceedings and the entry of judgment in accordance with 28 USC 636(c)…." R. Doc. 9.

1

I.  **Procedural History**

Plaintiff filed an application for DIB on October 6, 2014 and an application for SSI on October 7, 2014 alleging disability beginning March 17, 2014[6] due to physical and psychological conditions.[7] Plaintiff's claim was initially denied on April 24, 2015.[8] Thereafter, Plaintiff requested a hearing before an administrative law judge ("ALJ").[9] A hearing began on February 23, 2016 but was continued due to weather concerns and completed on May 2, 2016.[10] During both days of hearing, Plaintiff, represented by a non-attorney representative, testified.[11]

On August 23, 2016, the ALJ issued a notice of unfavorable decision.[12] Plaintiff requested review by the Appeals Council,[13] and on June 15, 2017, the Appeals Council denied Plaintiff's request for review.[14] On August 11, 2017 Plaintiff filed her Complaint in this Court.[15] Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action for

---

[6] AR pp. 263-269 (application for DIB), AR pp. 270-278 (application for SSI). Although the ALJ's decision states that Plaintiff filed applications for benefits on October 2, 2014, the application for DIB is dated October 6, 2014 and the application for SSI is dated October 7, 2014.

[7] *See*, AR p. 305 (Adult Disability Report listing disabling medical conditions of: "spinal stenosis, bulging disk resting against spinal cord, nerves in spinal cord resting in same position, right shoulder has AC joint arthritis & bursitis, facet joint arthritis, degenerative disk disease, fibromyalgia, cervical strain and DDD, lumber DDD, somatic dysfunction of the cervical thoracic"); AR p. 80 (February 23, 2016 hearing transcript noting "issues with my spine" and "major depressive disorder and anxiety").

[8] AR pp. 155-160.

[9] AR pp. 163-164.

[10] AR pp. 75-122.

[11] *See*, AR p. 201 (Appointment of Representative form whereby Plaintiff appointed Kiersten Pritchett of the Law Office of James Conner as a "non-attorney who is eligible to receive direct fee payment.").

[12] AR pp. 55-69.

[13] AR p. 259.

[14] AR pp. 1-6.

[15] R. Doc. 1.

judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[16]

## II. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[17] If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[18]

## III. The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[19] The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[20] In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed

---

[16] *See*, 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

[17] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

[18] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

[19] 20 C.F.R. §§ 404.1505; 416.905.

[20] 20 C.F.R. §§ 404.1520; 416.920.

impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[21]

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.[22] If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[23] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[24]

Here, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, degenerative joint disease, obesity, and affective disorder.[25] With respect to Plaintiff's alleged fibromyalgia, the ALJ explained that while the record contained "references to the diagnosis of fibromyalgia," the specific requirements for finding fibromyalgia to be a medically determinable impairment pursuant to Social Security Ruling ("SSR") 12-2p were not present.[26] The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to:

> perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. She can stand for six hours and/or walk for six hours in an eight-hour day. She can sit for six hours in an eight-hour day. She can never climb ladders, ropes, and scaffolds. She can frequently balance and occasionally perform all other postural activities. She can understand, remember, and carry out simple instructions involving

---

[21] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

[22] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[23] 20 C.F.R § 404.1520(g)(1).

[24] *Muse*, 925 F.2d at 789.

[25] AR p. 60.

[26] AR p. 61.

occasional interaction with coworkers and supervisors but less than occasional interaction with the public with occasional changes in work routine.[27]

Based on Plaintiff's RFC, age, education, and work experience, and based on the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform such that she was not disabled.[28]

## IV. Plaintiff's Allegations of Error

First, Plaintiff contends that "the record is void of indispensable evidence. The absent medical data are treatment notes from Ms. Rhodus' rheumatologist, Dr. Gauthier (FM specialist), and her podiatrist, Dr. Dileo."[29] In addition to arguing that the Commissioner failed to fully develop the record, Plaintiff also argues that "the ALJ's findings are diametrically opposed to what the current record shows."[30] Plaintiff's arguments based on the current record are focused on (1) the ALJ's step two determination that her asserted fibromyalgia was not a medically determinable impairment; (2) the ALJ's alleged failure to afford sufficient weight to the opinion of her treating primary care physician, Dr. Zerangue; and (3) the ALJ's findings with respect to her residual functional capacity ("RFC"). Finally, Plaintiff contends that the ALJ failed to appropriately consider her age classification. Because the ALJ committed legal error when she considered the medical evidence in developing Plaintiff's RFC, the court does not reach Plaintiff's other allegations of error.[31]

---

[27] AR p. 63.

[28] AR p. 68.

[29] R. Doc. 15, p. 5.

[30] R. Doc. 15, p. 5.

[31] The undersigned separates out the issue of Plaintiff's RFC from Plaintiff's allegation that the ALJ failed to adequately develop the record, which focuses on the ALJ's alleged failure to obtain records from Dr. Gauthier (who Plaintiff characterizes as an expert in fibromyalgia) and Dr. Dileo (a podiatrist). *See*, R. Doc. 15, pp. 1-2. In her Memorandum in Support of Appeal, Plaintiff asserts that she "*most likely*" treated with a neurosurgeon and had recurrent visits with her orthopedist and characterizes it as "egregious" that Dr. Dileo's address and phone number "are presently in the record." R. Doc. 15, p. 2, n. 1. Plaintiff *does not* state when she treated with Dr. Dileo or Dr.

5

## V. Law and Analysis

### A. RFC Determination

As noted above, the ALJ found that Plaintiff had the RFC "to perform less than the full range light work," could "lift and/or carry twenty pounds occasionally and ten pounds frequently," and could stand, sit, and/or walk for six hours in an eight-hour day.[32] The ALJ further found that Plaintiff could "never climb ladders, ropes, or scaffolds" but could "frequently balance and

---

Gauthier, and Plaintiff's reference to Dr. Dileo's contact information in the record is a short-term disability claim form completed by Dr. Zerangue (Plaintiff's primary care physician) indicating only that Dr. Zerangue referred Plaintiff to Dr. Dileo. AR p. 712. Despite Plaintiff's assertion in her briefing, there is nothing in the record evidencing that Plaintiff actually treated with either doctor. Plaintiff did not include either provider as someone who might have medical records about any of her physical or mental conditions in various submissions setting out treatment providers, *see*, AR pp. 308-314; pp. 354-357; p. 374, and Plaintiff's citations to portions of the administrative record indicate, at most, that Plaintiff's primary care physician, Dr. Zerangue, referred her to specialists. R. Doc. 15, p. 5 (citing to AR p. 389 (pre-hearing memorandum from non-attorney representative highlighting portions of consultative examination by Dr. Davidson, treatment by Rosenblum Mental Health Center, and psychological consultative examination by Dr. Durdin), p. 677 (May 12, 2015 treatment note from Dr. Zerangue that does not appear to include reference to either specialist), p. 685 (May 1, 2015 treatment note from Dr. Zerangue noting plan of "to podiatry – Dr. Dileo" and "to rheumatology – Dr. Gauthier"), p. 687 (March 25, 2014 treatment note from Dr. Zerangue reflecting treatment plan includes "f/u…ortho/podiatry"), p. 692 (April 17, 2014 short term disability form completed by Dr. Zerangue noting that "MRI/x-ray L spine ordered – then to neurosurgeon" and "bilateral planters fasciitis – going to podiatry"), p. 712 (March 25, 2014 short term disability form wherein Dr. Zerangue lists Dr. Dileo in response to the question "are you aware of or have you referred your patient to other treating providers?")). Although "[t]he ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts," *Brock v. Chater*, 84F.3d 726, 728 (5th Cir. 1996), it is generally the duty of the claimant to obtain medical records. *Gonzalez v. Barnhart*, 51 Fed. Appx. 484, 2002 WL 31319423, at * 1 (5th Cir. 2002) (unpubl.) (citing *Thornton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981)). Plaintiff does not assert, and the record does not indicate, that Plaintiff requested the Social Security Administration's assistance in obtaining records from Dr. Gauthier or Dr. Dileo. Moreover, "[a]n ALJ's decision will be reversed or remanded by a court if the claimant establishes, first, that the ALJ failed to fulfill her duty to adequately develop the record; and second, that claimant was prejudiced by that failure." *Prevost v. U.S. Commissioner, Social Security Administration*, Civil Action No. 6:17-cv-01364, 2018 WL 3567416, at * 12 (W.D. La. June 29, 2018) (citing *Brock*, 84 F.3d at 728 ("We will reverse the decision of an ALJ as not supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby."). "To establish prejudice, a claimant must demonstrate that he 'could and would have adduced evidence that might have altered the result.'" *Prevost*, 2018 WL 3567416, at * 12 (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). Here, the ALJ did not fail in her duty to develop the administrative record and, in any event, Plaintiff has not shown any prejudice stemming therefrom. *Compare*, *Thornton*, 663 F.2d at 1316 ("once the Social Security Administration received Thornton's letters requesting assistance in obtaining specific medical and psychological records, the administrative process should not have proceeded to a final decision without either some assurance from Thornton that she no longer sought to present the records, or notice from the Social Security Administration that it would not obtain the records and that Thornton would have ample time to acquire the records herself and file them with the ALJ for consideration.").

[32] AR p. 63.

perform all other postural activities."[33] For the reasons that follow, substantial evidence does not support the ALJ's determinations regarding Plaintiff's physical abilities, specifically, Plaintiff's ability to sit, stand, and walk for six hours in an eight-hour day.

"Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator."[34] Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."[35] "The weight given to opinions from nonexamining physicians depends on 'the degree to which they provide supporting explanations for their opinions.'"[36]

The only place in the administrative record reflecting that Plaintiff can sit, stand, and/or walk for six hours in an eight-hour day is in a March 11, 2015 physical RFC assessment completed

---

[33] AR p. 63.

[34] *Giles v. Astrue*, 433 Fed. Appx. 241, 246, 2011 WL 2847449, at * 4 (5th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)).

[35] *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). For claims filed on or after March 27, 2017, the federal regulations provide:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c. Because this claim was filed prior to March 27, 2017, the treating physician rule set forth in 20 C.F.R. § 404.1527 controls.

[36] *Giles*, 433 Fed. Appx. at 246 (citing § 404.1527(d)(3)).

7

by Dr. Navjeet Singh. Dr. Singh opined, based on his review of the record, that Plaintiff could stand, sit, and/or walk for "about 6 hours in an 8-hour day."[37] The ALJ afforded Dr. Singh's opinion "great weight" because, per the ALJ's Ruling, Dr. Singh "identified appropriate exertional and postural limitations to avoid exacerbating the claimant's pain associated with her degenerative joint disease, degenerative disc disease, and obesity."[38] In contrast, Plaintiff's treating physician, Dr. Zerangue,[39] opined in a February 21, 2016 Medical Source Statement that Plaintiff could sit, stand, or walk for less than two hours in an eight-hour work day,[40] would need to lay down for extended periods during the day, and would need unscheduled thirty minute breaks every thirty minutes.[41] The ALJ explained that she gave the opinion of Dr. Zerangue "little weight" because Dr. Zerangue's opinions "conflict with all other medical opinions of record," and because Dr. Zerangue "did not order independent tests to confirm his opinions and appeared to rely heavily upon the claimant's subjective statements."[42]

Dr. Singh's RFC determination (including the opinion that Plaintiff could sit, stand, and/or walk for 6 hours in an 8-hour day) is based on Dr. Singh's record review, including review of a

---

[37] AR pp. 132.

[38] AR p. 66.

[39] Although Plaintiff asserts that Dr. Zerangue treated her for almost 6 years, and the Medical Source Statement ("MSS") completed by Dr. Zerangue indicates that Plaintiff had "appts every 3 months or more for least 5-6 years," the first treatment note from Dr. Zerangue included in the administrative record is dated March 25, 2014. AR p. 687. The MSS completed by Dr. Zerangue is dated February 21, 2016, and the last treatment record from Dr. Zerangue is dated February 8, 2016. AR pp. 761-766 and p. 674. Accordingly, the record itself only supports a treatment history of less than two years, with Plaintiff visiting Dr. Zerangue 16 times during that period. While the Court is concerned with what appears to be a pattern of unsupported assertions in Plaintiff's briefing, including Plaintiff's assertions (discussed above) regarding treatment by Dr. Gauthier and Dr. Dileo, given the frequent treatment evidenced in the medical records available, albeit for a shorter time period than Plaintiff asserts, Dr. Zerangue should be considered a treating physician. *See*, 20 CFR § 404.1502 (defining a "treating source" as a medical source that has or has had "an ongoing treatment relationship" such that the medical evidence shows that Plaintiff sees or has seen "the source with a frequency consistent with accepted medical practice for the type of treatment.").

[40] AR p. 763.

[41] AR p. 764.

[42] AR p. 66.

March 1, 2015 consultative examination ("CE") completed by Dr. Douglas Davidson.[43] Dr. Davidson examined Plaintiff of February 25, 2015[44] and found that Plaintiff could "sit, stand, walk and do light exertional activities as tolerated."[45] Dr. Davidson did not find that Plaintiff could sit, stand, and/or walk for six hours in an eight-hour day, and there is no explanation in the CE report as to what the phrase "as tolerated" means. While Dr. Davidson noted on examination that Plaintiff was able to move from standing to sitting to standing positions "very slowly and unassisted," he also reported that Plaintiff required assistance when moving from sitting to supine to sitting positions, exhibited a bilateral antalgic gait, required assistance when moving on and off the scale and on and off the examination table, and needed assistance dressing and undressing.[46] Significantly, it appears that at the time Dr. Singh reviewed the record and made his RFC assessment, records from Plaintiff's treating primary care physician, Dr. Zerangue, had not been received into the record.[47] Even setting aside the non-controlling portions of Dr. Zerangue's records that go to the ultimate issue of disability (a question that is reserved to the

---

[43] AR pp. 595-600. In addition to Dr. Davidson's CE, it appears that Dr. Singh reviewed imaging studies. AR p. 132 ("imaging studies of lumbar spine, which shows normal spinal alignment, vertebral body heights are maintained. There is mild endplate sclerosis present as well as facet hypertrophy consistent w/degenerative changes."). There is no mention of any review of any records from Plaintiff's treating physician, Dr. Zerangue.

[44] AR p. 596.

[45] AR p. 598.

[46] AR p. 599.

[47] Although the Commissioner argues that the record contained Dr. Zerangue's treatment notes at the time of Dr. Singh's CE, (R. Doc. 19, p. 15), this is incorrect. Dr. Singh completed his physical RFC assessment on March 11, 2015. AR p. 133. It appears that records from Dr. Zerangue were not received by the Social Security Administration until, at the earliest April 16, 2015. AR p. 124 (showing "msc dib dev/docmtn" received from Zerangue Internal Medicine on April 16, 2015). However, in a pre-hearing memorandum submitted on February 23, 2016, Plaintiff's representative stated that "records from Ms. Rhodus' primary treating neurologist, Dr. Anthony Zerangue, have been requested twice, and we are still awaiting the records. Dr. Zerangue's office reports that they are in process. These documents will be submitted as soon as they are received." AR p. 384. During the February 23, 2016 hearing before the ALJ, Plaintiff's representative stated that records from Dr. Zerangue had been submitted that morning, AR p. 78, and the records from Dr. Zerangue in the administrative record include notation at the top of each page indicating that the records were faxed to "Conner Law" on February 23, 2016. *See*, AR pp. 674-766. Under either timeline, the records were not received by the Social Security Administration at the time Dr. Singh conducted his record review.

9

Commissioner),[48] certain of Dr. Zerangue's records indicate functional limitations, and Dr. Zerangue's opinion was that Plaintiff was able to occasionally (defined as 0-33% of the time) sit, stand, and walk.[49] Although other treatment notes included in Dr. Zerangue's records indicate improvement,[50] substantial evidence does not support the ALJ's determination that Plaintiff was able to sit, stand, and walk for six hours in an eight-hour day when such determination was based on a record review which did not include records from Plaintiff's treating physician indicating more restrictive limitations and instead was based on a CE report that only provided that Plaintiff

---

[48] The Fifth Circuit has explained that "some opinions by physicians are not medical opinions, and as such have no 'special significance' in the ALJ's determination." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (quoting 20 C.F.R. § 404.1527(e) & (e)(3)). "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank*, 326 F.3d at 620 (quoting 20 C.F.R. § 404.1527(e)(1)). Accordingly, Dr. Zerangue's opinion regarding Plaintiff's ultimate ability to work is not dispositive of whether substantial evidence supports the weight given by the ALJ to Dr. Zerangue's opinion. *See*, AR p. 687 (Dr. Zerangue treatment note including impression that Plaintiff is "100% disabled"); AR p. 686 (same); AR p. 690 ("100% disability – instructed patient to apply for social security disability as she will qualify"); AR p. 689 ("100% disabled – diagnoses have worsened to the point patient is unable to function at any job…"); AR p. 685 ("no work- as patient is physically incapable of working in present…."); AR p. 681 (100% disabled); AR p. 698 (short term disability form noting "no work of any type" beginning March 14, 2014 with an end date of "long term/lifetime"); AR p. 677 (100% disabled).

[49] *See*, AR p. 712 (noting "markedly impaired gait"); AR p. 686 (noting Plaintiff had difficulty walking); AR p. 693 (Dr. Zerangue's opinion that Plaintiff can occasionally sit, stand and walk (0-33% of the time) and can never stoop, crouch, kneel, crawl, or climb stairs); AR pp. 685, 684, 682 (noting antalgic slow gait).

[50] *See*, AR p. 681 (Zerangue note reflecting "Seroquel is helping significantly pain still severe but reduced…."); AR p. 680 (Dr. Zerangue note reflecting "patient has resumed control of controlled meds and seems to be feeling/doing well."). Other records indicate Plaintiff *did* respond well to physical therapy and other forms of treatment, especially records dated prior to Plaintiff's alleged disability onset date. *See*, *e.g.*, AR p. 445 (Feb. 4, 2013 Ponchatoula Therapy note showing 0% to goals of increased bilateral shoulder flexion, increased cervical range of motion, and tolerating ADL's and work-related activities), AR p. 434 (March 4, 2013 Ponchatoula Therapy note reflecting "mod improvements in ROM, activity tolerance noted," "Pt with some progress despite limited attendance," and noting that claimant met goal of increased bilateral shoulder flexion, was 50% to goal of increasing cervical AROM by 5 degrees, and 50% to goal of tolerating all ADL's and work-related activity without limitation from pain); AR p. 428 (March 8, 2013 Ponchatoula Therapy note recording "Pt with reduced overall stiffness noted today"); AR p. 422 (March 18, 2013 Ponchatoula Therapy note, "Pt notes reduced overall pain. Standing tolerance limited"); AR p. 405 (April 22, 2013 Ponchatoula Therapy note reflecting patient 90% to goal of increasing bilateral shoulder flexion and 65% to goal of tolerating ADLs and work-related activity); AR p. 402 (Ponchatoula discharge summary, "pt notes reduced pain with treatment"). *See also*, AR p. 669 (April 3, 2013 treatment note reflecting "we did perform osteopathic manipulative medicine in the thoracic and cervical spine and get significant relief in her neck"); AR p. 668 (April 29, 2013 treatment note, "she had significant relief in her upper back and her neck after the soft tissue techniques in her cervical spine and then getting her up carefully from there. She felt significant relief on her back as well after her OMM therapy."). The court makes no determination here regarding whether Plaintiff is or is not disabled. Instead, remand is appropriate based on the ALJ's legal error in basing Plaintiff's RFC on physical residual capabilities that were only set out in a record review opinion completed at a time when Plaintiff's treating physician's records were not part of the record.

10

could sit, stand, and/or walk "as tolerated."[51] Moreover, based on the functional limitations expressed by Dr. Zerangue, the vocational expert ("VE") testified that there would not be work available to Plaintiff.[52] The ALJ's weighing of Dr. Singh's medical opinion was not supported by substantial evidence because that opinion did not consider records of Plaintiff's treating physician with more restrictive limitations and therefore this matter must be remanded.[53]

---

[51] *See*, *Rushing v. Colvin*, Civil Action No. 4:14-cv-149, 2015 WL 3649816, at * 5 (N.D. Miss. June 11, 2015) (remanding where ALJ gave significant weight to opinion of a non-examining consultative physician who completed an RFC assessment before Plaintiff's MRI and CT scans were part of the record); *Ferris v. Astrue*, Civil Action No. CV08-0210, 2008 WL 4772812, at * 9-10 (W.D. La. Oct. 9, 2008) (finding substantial evidence did not support ALJ's RFC determination whether treating physician's opinion was discounted in favor of a contrary non-examining physician's opinion and non-examining physician's opinion was based on outdated and incomplete medical records). *See also*, *Burgess v. Astrue*, 537 F.3d 117, 130-131 (1st Cir. 2008) (ALJ erred by relying on the opinion of an expert who failed to examine a key piece of evidence in the record); *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("The opinions of nonexamining, reviewing physicians…when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence."); *Gibson v. Colvin*, 3:15-cv-00128, 2016 WL 3647685, at * 3 (E.D. Ark. July 1, 2016) (finding ALJ's decision not supported by substantial evidence where, *inter alia*, ALJ erred in giving significant weight to the opinion of a consulting physician who did not examine claimant and who reviewed an incomplete record); *Pennington v. Colvin*, No. 3:14-cv-1628, 2015 WL 4093345, at * 5 (N.D. Ind. July 7, 2015) (substantial evidence did not support the ALJ's determination that non-examining physician's opinion was entitled to great weight where doctor issued the opinion without the benefit of over a year's worth of medical records leading up to the hearing).

[52] Under the harmless error rule, a judgment will not be vacated unless the substantial rights of a party have been affected. Procedural perfection in administrative proceedings is not required and improprieties constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988)*; Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Here, the error was not harmless. The ALJ's decision to weigh Dr. Singh's opinion regarding Plaintiff's limitations more heavily than Dr. Zerangue's affected Plaintiff's RFC and the ultimate determination regarding Plaintiff's ability to work. During the May 2, 2016 hearing, the VE testified that an individual with limitations matching those ultimately used by the ALJ as Plaintiff's RFC retained the ability to work as a janitor, cleaner, inspector, sorter, tester, sampler, or "weigher." AR pp. 117-118. When the frequent breaks Dr. Zerangue recommended were considered, the VE testified that Plaintiff would not be able to perform those types of jobs. AR p. 119. Moreover, an ability to sit, stand, and/or walk for a good deal of time during the day was necessary to the ALJ's determination that Plaintiff retained the ability to perform light work. *See*, 20 CFR § 404.1567(b) ("light" work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). Assuming *arguendo* that Plaintiff could, as Dr. Zerangue opines, sit, stand, or walk for less than two hours in an eight-hour work day, Plaintiff would not be physically capable of performing light work. AR p. 763.

[53] *See*, *Ferris*, 2008 WL 4772812, at * 11 ("Since substantial evidence does not support the conclusions of the ALJ and the Commissioner, their decision is incorrect as a matter of law. However, this does not entitle Ferris to a decision in her favor based upon the existing record. The record is simply inconclusive as to whether Ferris can perform her past relevant work and as to whether there are any jobs existing in sufficient numbers in the national economy which Ferris can perform, given her true impairments and residual functional capacity. Therefore, Ferris' case should be remanded to the Commissioner for further proceedings.").

## VI. Conclusion

For the reasons set forth herein, and based on the applicable standard of review under § 405(g) and the analysis which follows, the court **VACATES** the Commissioner's decision and **REMANDS** Plaintiff's case for reevaluation of the opinion evidence and reassessment of Plaintiff's RFC to determine whether Plaintiff is able to sit, stand, and walk for six hours in an eight-hour day.

Signed in Baton Rouge, Louisiana, on March 26, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**